**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **CAMRON SNEED,** | § | |
| **Plaintiff,** | § | |
| **v.** | § | |
| | § | **No. 1:19-CV-00608-LY** |
| **AUSTIN INDEPENDENT SCHOOL** | § | |
| **DISTRICT,** | § | |
| **Defendant.** | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE:

Before the court are Austin Independent School District's Rule 12(b)(6) Motion for Partial Dismissal of Plaintiff's Second Amended Complaint (Dkt. #49) and all other related filings. *See* Dkt. #54, #55.[1] After reviewing the filings and relevant case law, the undersigned issues the following Report and Recommendation to the District Court.

## I. BACKGROUND

On June 12, 2019, Pamela Parks and Charles Sneed, as both parents and next friends of Camron Sneed ("Plaintiff"), filed the above-styled discrimination lawsuit against Austin Independent School District ("AISD"). Dkt. #1. As reflected in Plaintiff's Second Amended Complaint, Plaintiff turned eighteen during the pendency of this litigation and, consequently, has amended her pleadings in order to bring this lawsuit individually as an adult. Dkt. #47 (Second Amended Complaint). Plaintiff levies two claims against AISD: a statutory Title VI claim and a Fourteenth Amendment due process claim pursuant to 42 U.S.C. § 1983. *See id.*

---

[1] The motion was referred by United States District Judge Lee Yeakel to the undersigned for a Report and Recommendation as to the merits pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

Plaintiff, who identifies as a female African-American, was a student at James Bowie High School (the "High School") in the Austin Independent School District from the fall of 2016 through the spring of 2019. Plaintiff alleges that during this time she was repeatedly and routinely the "victim of bullying, harassment, discrimination, and retaliation based on her race." Dkt. #47 at 1. For example, while at the High School Plaintiff alleges she was the recipient of various vial racial slurs, including "fuck that nigger," "I'll kill a fucking nigger," "nigger bitch," "black bitch," and "noodle nigger," and repeatedly harassed on account of her race. *Id.*

In December of 2016, Plaintiff and her mother ("Parks") were at the High School farm when they allegedly encountered a group of white males, consisting of present and former students, that called them various racial slurs. *Id.* at 12. Plaintiff contends that despite being present, the agriculture teacher, Brad Pierce, refused to intervene. *Id.* Plaintiff additionally contends that another teacher, Tiffany Black, the interim principal, Susan Leos, and the assistant principal, "Mr. Trevino," were informed of the events, yet "failed to do anything at all until [Parks] persisted with her request." *Id.* Because of Parks's persistence, Plaintiff contends that Leos and Trevino spoke at an "FFA alumni meeting where they vaguely discussed inappropriate behavior of students but failed to address that the incident was racially motivated and any corrective actions that would take place." *Id.* Plaintiff alleges that despite receiving assurances from Leos and Trevino that an investigation into the incident would take place, the family "reasonably believes the School District did nothing" because the racial behavior continued. *Id.*

Plaintiff alleges that students continued to make racial jokes and insults in the presence of teachers with no repercussions during her 2017 school term. *Id.* at 14. In October 2017, Plaintiff alleges that she and Parks found a noose around a white feed bag hanging above Plaintiff's equipment and pigs. *Id.* Plaintiff alleges the teacher did not remove the noose and instead permitted

students to write "Boo I'm a ghost" on the hanging bag. *Id.* After Leos allegedly stopped communicating with her, Parks contacted the "District office" and was able to speak with the associate superintendent of high schools, Craig Shapiro. *Id.* at 15. Shapiro promised to investigate the racial incidents and allegedly asked Parks to meet the new principal to develop an action plan. *Id.* Plaintiff alleges that despite meeting with the new principal, Shapiro, campus administration, various teachers, and the superintendent's assistant, Parks "never received a response." *Id.* Plaintiff contends that because of the family's correspondence with the High School's administration regarding the racism they repeatedly experienced, Plaintiff began experiencing disparate treatment and even retaliation. *See id.* at 15-17.

During the 2018-2019 school term, a white student allegedly told Plaintiff "he had a nickname for her, not 'nigger, but noodle nigger.'" *Id.* at 17. Plaintiff contends that despite conversations with the High School's then principal and assistant principal regarding this racial harassment, students continued to make racial slurs and harass Plaintiff without teacher intervention. Plaintiff further contends that her family's complaints to the High School's administration resulted in further retaliation. For example, Plaintiff alleges the agriculture teachers "started to become upset and retaliate" against her, an Alumni Organization was disbanded after Parks brought the racial disparity to their attention, and the principal filed a police report that claimed an old alumni tractor had been stolen by Plaintiff's father ("Sneed"), despite the fact that the tractor had previously been sold. *Id.* at 19. Further, Plaintiff alleges that "teachers named [Plaintiff] in the police report as a possible suspect." *Id.* at 19. In light of this and Plaintiff's allegations that "[t]he family began receiving phone calls that the Principal and others were spreading rumors throughout the school and community about the stolen tractor," Plaintiff's family contacted Shapiro. Plaintiff alleges that despite Shapiro's promise to hold a meeting and address

the slander and defamation of character, Shapiro avoided the family "for months, and once again did nothing." *Id.*

Plaintiff also alleges that she was discriminatorily treated "[t]he week of the Travis County Youth Show." *Id.* at 20. Plaintiff contends that unlike white students, she was informed by the principal that the school would not bid on her or support her at the youth show because her family did not join the booster club. *Id.* Additionally, Plaintiff alleges that two individuals, Mark Fischer and Gary Adams, told Plaintiff's classmates, FFA members, and people at the Travis County Youth Show that Plaintiff "came from a bunch of criminals." *Id.* As a result of the aforementioned harassment and discrimination, Plaintiff alleges she has experienced sleep apnea, loss of appetite, and inconsolable crying.

Per her Second Amended Complaint filed on April 29, 2020, Plaintiff alleges that AISD failed to properly train and supervise its staff, address her complaints, or remedy the effects of the alleged racially motivated harassment against her. Specifically, Plaintiff alleges that AISD violated Title VI by failing in multiple ways to correctly deal with Plaintiff's bullying and harassment allegations. *See* Dkt. #47 at 21-23, 26-27. Additionally, Plaintiff alleges that AISD's actions and inactions violated her Fourteenth Amendment Due Process right pursuant to 42 U.S.C. § 1983. *Id.* at 24-25.

On May 5, 2020, AISD filed its Rule 12(b)(6) Motion for Partial Dismissal of Plaintiff's Second Amended Complaint, seeking the dismissal of only Plaintiff's section 1983 claim. Dkt. #49. Plaintiff filed a response, and AISD filed its reply.

## II.   LEGAL STANDARD

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6) the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be

taken as true. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. v. Twombly*, 550 U.S. 544, 555-57 (2007). Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570. The Supreme Court has made clear this plausibility standard is not simply a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The standard is properly guided by "[t]wo working principles." *Id*. First, although "a court must 'accept as true all of the allegations contained in a complaint,' that tenet is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. Second, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. Thus, in considering a motion to dismiss, the court must initially identify pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and determine whether those allegations plausibly give rise to an entitlement to relief. If not, "the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III.   ANALYSIS

Plaintiff alleges a section 1983 Fourteenth Amendment due process claim against AISD, based on (1) a theory of supervising liability, (2) AISD's failure to adequately train its employees, and (3) AISD's failure to adequately supervise its employees. Dkt. #47 at 24. Specifically, Plaintiff first alleges that AISD is liable because Shapiro "was intimately knowledgeable about the complaints that [Plaintiff] was a victim of race-based aminus," yet failed in his supervisory capacity to investigate such allegations. *Id.* Plaintiff also alleges Shapiro failed in his supervisory duty to assure that his staff was sufficiently trained in addressing race-based animus and, accordingly, showed deliberate indifference. *Id*. Next, Plaintiff contends that the School Board "obviously failed" to train and supervise its staff on how to address complaints based on racial discrimination, failed to train staff on cultural issues regarding African-American persons, and failed to train staff on cultural issues regarding bias. *Id.* at 25. Notably, Plaintiff does not allege that the AISD Board of Trustees was ever aware of the alleged harassment nor that AISD's policies or regulations are facially unconstitutional. *See id.*

### A.   Applicable Law

Section 1983 provides that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ." 42 U.S.C. § 1983. Municipal entities such as AISD qualify as "persons" under section 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Under *Monell* and its progeny, however, "a municipality cannot be held liable under [section] 1983 on a respondeat superior theory." *Id*. at 691. Accordingly, "isolated unconstitutional actions by municipal

employees will almost never trigger liability"; rather, "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

Municipal liability under section 1983 requires proof of three elements: "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Monell*, 436 U.S. at 694. "The 'official policy' requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986). The municipality is liable if an official policy itself is unconstitutional or the policy was adopted with "deliberate indifference" to its known or obvious consequences. *Fennell v. Marion Indep. Sch. Dist.,* 804 F.3d 398, 412 (5th Cir. 2015). "An official policy may take various forms, including a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id*. at 413 (internal quotation omitted). "Regardless of its form, the policymaker must have actual or constructive knowledge of the official policy or custom." *Id*. It is important to emphasize that "[t]he policymaker must have final policymaking authority." *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003). Therefore, to prevail against a school district like AISD, "a plaintiff must show that the district's final policymaker acted with deliberate indifference in maintaining an unconstitutional policy that caused the plaintiff's injury." *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 364–65 (5th Cir. 2020).

The Supreme Court has stated that "whether an official had final policymaking authority is a question of state law." *Pembaur*, 475 U.S. at 483. It is clear that under Texas law, the final policymaking authority in an independent school district rests with the district's board of trustees.

*Doe*, 964 F.3d at 365; *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993); *see also* TEX. EDUC. CODE ANN. § 11.151(b) ("The trustees as a body corporate have the exclusive power and duty to govern and oversee the management of the public schools of the district."). Here, the final policymaker for AISD is the AISD Board of Trustees.

### B.      Respondeat Superior and Supervisory Liability

As a preliminary matter, the court first notes that Plaintiff's Response is not entirely consistent with Plaintiff's Second Amended Complaint. For example, while Plaintiff's pleadings allege that AISD is liable for Shapiro's actions "pursuant to a Theory of Supervising Liability," Plaintiff's Response for the first time attempts to assert liability under the same theory for the actions of "both Dr. Cruz and Dr. Shapiro." *Compare* Dkt. #47 at 24, *with* Dkt. #54. It is "wholly inappropriate to use a response to a motion to dismiss to essentially raise a new claim for the first time." *Diamond Beach Owners Ass'n v. Stuart Dean Co.*, 3:18-CV-00173, 2018 WL 7291722, at *4 (S.D. Tex. Dec. 21, 2018), *report and recommendation adopted*, 3:18-CV-00173, 2019 WL 245462 (S.D. Tex. Jan. 17, 2019). Accordingly, because new facts or claims made in response to a motion to dismiss to defeat the motion are not incorporated into the original pleadings, this court will consider only the factual allegations and claims made in Plaintiff's Second Amended Complaint.

Plaintiff first alleges AISD is liable under section 1983 because of Shapiro's actions and inactions. *See* Dkt. #47 at 24. However, because AISD cannot be held liable for an employee's actions under a *respondeat superior* theory, AISD can only be liable for Shapiro's actions if Shapiro was a final policymaker. *See Doe*, 964 F.3d at 365 (under 1983, "to prevail against a public school district, a plaintiff must show that the district's final policymaker acted with deliberate indifference"). Plaintiff does not allege, and the court does not find, that Shapiro is a member of

the AISD Board of Trustees. *See Jett*, 7 F.3d at 1245 ("Texas law is clear that final policymaking authority in an independent school district . . . rests with the district's board of trustees"). Furthermore, although Shapiro is an associate superintendent, "[n]othing in the Texas Education Code purports to give the Superintendent any policymaking authority or the power to make rules or regulations." *Jett*, 7 F.3d at 1245. Accordingly, because Shapiro is not a final policymaker, his actions or inactions cannot form the basis of Plaintiff's section 1983 claim.

Despite the fact that the only named defendant in this lawsuit is AISD, Plaintiff cites a number of cases in her Response that stand for the proposition that liability can stem from a supervisor's "'gross negligence' or 'deliberate indifference' to violations of their subordinates." Dkt. #54 at 8 (citing *Hinshaw v. Doffer*, 785 F.2d 1260 (5th Cir. 1986), and *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994)). These cases and Plaintiff's corresponding "supervisory liability" argument reveal Plaintiff's misunderstanding of the law. Both the *Doe* and *Hinshaw* courts analyzed whether supervisors *individually* can be held liable under section 1983. *See Hinshaw*, 785 F.2d at 1263-64; *Doe*, 15 F.3d at 453-54 ("The most important difference between *City of Canton* and this case is that the former dealt with a municipality's liability whereas the latter deals with an individual supervisor's liability."). Here, Plaintiff does not bring claims against either Shapiro or the sparsely mentioned Cruz.[2] *See* Dkt. #47. Accordingly, Plaintiff's argument based on Shapiro's actions or inactions fails.

### C.    Failure to Train

Plaintiff next alleges that the "School Board obviously has failed to train staff in regard to the laws, regulations and directives" on racial discrimination.[3] Dkt. #47. To avoid dismissal of a

---

[2] Plaintiff's twenty-nine page Second Amended Complaint only mentions Superintendent Cruz three times. *See* Dkt. #47. Moreover, Plaintiff concedes she never spoke with or met Cruz. *Id.* at 21.

[3] Specifically, Plaintiff alleges the School Board "obviously failed to train staff on how to address complaints based upon racial discrimination. They failed to train staff on cultural issues regarding African-American persons.

failure-to-train claim, a plaintiff must plead sufficient facts to show: "(1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010). A school district can be held liable under section 1983 for failing to train its employees only if that failure "reflects deliberate indifference to the constitutional rights of its [students]." *City of Canton v. Harris*, 489 U.S. 378, 386-92 (1989); *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009) ("The failure to train can amount to a policy if there is deliberate indifference to an obvious need for training where citizens are likely to lose their constitutional rights."). It is not sufficient to show that an injury or accident could have been avoided if the employee had better or more training. *Canton*, 489 U.S. at 391.

In what appears to be a cherry-picked summary of ill-defined policies,[4] Plaintiff argues "it is clear that [AISD] failed in a number of manners and particulars . . . regarding training and supervision of staff." Dkt. #47 at 23. Specifically, in referencing what appears to be a School Board policy titled "DMA Legal," Plaintiff argues this policy does not require "staff to take any particular training on dealing with race or cultural sensitivity issues . . . . [n]or is there is [*sic*] any specific training provided on what is termed 'implicit bias' or 'unconscious bias.'" *Id*. at 10-11. Based on this one policy, Plaintiff concludes that "there are no specific training programs for staff on the specific culture issues regarding [] race/ethnicity. Nor is there any specific training program to staff on implicit or unconscious bias." *Id.* at 23.

---

They failed to train staff on cultural issues regarding unconscious bias or implicit bias of persons who are of African American descent. The need for such training is obvious when looking at the issues facing the greater City of Austin, the State of Texas and the greater United States of America, regarding these very same concerns. Moreover, such training is required by federal jurisprudence." Dkt. #47 at 25.

[4] For example, one of these policies is referenced as only "FFH Local." *See* Dkt. #47 at 10.

Even if this court were to find that Plaintiff properly pleaded the other failure-to-train elements, this claim contains a fatal flaw; Plaintiff does not plead sufficient facts to show AISD's deliberate indifference. As the Fifth Circuit has explained, the Supreme Court's decision in *Canton* envisioned two means of proving deliberate indifference. *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 624 (5th Cir. 2018) (citing *City of Canton*, 489 U.S. at 386-92). First, deliberate indifference can be found if municipal employees violate constitutional rights "so often" that it can be inferred from the pattern of violations "that the need for further training must have been plainly obvious to the . . . policymakers." *Id.* This "proof-by-pattern method is 'ordinarily necessary'" to prove deliberate indifference. *Id.* (citing *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997)).

"In a narrow range of circumstances," a "single-incident" may be sufficient to demonstrate deliberate indifference. *Connick v. Thompson*, 563 U.S. 51, 63 (2011). Under this narrow exception, "a plaintiff must prove that the highly predictable consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the moving force behind the constitutional violation." *Sanders-Burns v. City Of Plano*, 594 F.3d 366, 381 (5th Cir. 2010) (internal citations omitted). The caselaw behind this single-incident exception "suggests . . . that the exception is generally reserved for those cases in which the government actor was provided no training whatsoever." *Peña v. City of Rio Grande City*, 879 F.3d 613, 624 (5th Cir. 2018). For example, if a policymaker "opts to provide no training whatsoever to police officers concerning the established and recurring constitutional duty not to use excessive deadly force, a factfinder may reasonably infer that the city acted with the requisite deliberate indifference." *Littell*, 894 F.3d at 625.

Here, Plaintiff has not pleaded sufficient facts to show that AISD's staff violated constitutional rights "so often" that the court may infer from the pattern of violations a "plainly obvious" need for further racial harassment training. *Id.* at 624 (quoting *Canton*, 489 U.S. at 490). Besides the isolated allegations of bullying and harassment that Plaintiff herself endured, Plaintiff's pleadings do not direct the court to any other instances of harassment allegedly predicated on race. Thus, because Plaintiff has not demonstrated "a pattern of abuses that transcends the error[s] made in a single case," she has not sufficiently pleaded deliberate indifference via the proof-by-pattern method.[5] *Peterson*, 588 F.3d at 850 (after noting "[a] pattern also requires sufficiently numerous prior incidents, as opposed to isolated instances," finding that 27 complaints over four years was insufficient to show a pattern of abuse); *see Pineda v. City of Houston*, 291 F.3d 325 (5th Cir. 2002) (finding eleven incidents of warrantless entry did not support a pattern of abuse); *see also C.O. b/n/f Mendoza v. Round Rock Indep. Sch. Dist.*, A-19-CV-0860-LY, 2020 WL 5045034, at *7 (W.D. Tex. Aug. 26, 2020).

Additionally, Plaintiff has not pleaded sufficient facts to establish deliberate indifference under the narrow single-incident exception. Plaintiff's own pleadings suggest that AISD provided some training on discrimination and harassment. For example, Plaintiff concedes that AISD "has long had, and re-authorized policies and procedures related to Student Welfare and keeping students free from Discrimination, Harassment & Retaliation which address, among other things, bullying, harassment, and assault." Dkt. #47 at 8. Plaintiff further notes that these policies and procedures "set[] out definitions of discrimination and harassment based upon race and nationality," and include a non-exhaustive list of potential corrective actions for such

---

[5] For the first time in her Response, Plaintiff directs the court to two pending lawsuits brought by others against AISD. As noted, because these pending cases are not cited in her Second Amended Complaint, despite the court having given her ample opportunities to amend her pleadings, the undersigned will not consider them.

discrimination and harassment, like "a training program for those involved in the complaint." *Id.* at 10. Accordingly, Plaintiff pleads that training was inadequate in "one limited area" – i.e., harassment based on "cultural issues" like implicit racial bias – and not that AISD completely failed to train on harassment and discrimination. Dkt. #47 at 25; *see Estate of Davis ex rel. McCully v. City of North Richmond Hills*, 406 F.3d 375, 383, 386 (5th Cir. 2005) (the "narrow" single incident exception has applied when the court finds a complete failure to train, not just a failure to train in "one limited area"); *cf. Littell*, 894 F.3d at 624 (recognizing a failure-to-train claim when the plaintiffs alleged the school district had a policy of providing no training whatsoever regarding its employees' legal duties not to conduct unreasonable searches and finding that there was an obvious need for some form of training). This distinction is detrimental to the single-incident exception and, thus, Plaintiff has not sufficiently pleaded deliberate indifference.

Because Plaintiff has failed to plead sufficient facts to establish the deliberate indifference element of the failure-to-train test, Plaintiff's failure-to-train claim should not survive AISD's motion to dismiss.

### D.   Failure to Supervise

Plaintiff also alleges the "School Board obviously failed to correctly supervise staff," arguing that she:

> has provided significant and plausible factual support that the acts and omissions of both Cruz and Shapiro and all the staff working under them, in the face of overwhelming evidence [*sic*] [Plaintiff] was a victim of harassment based upon race, and the failure to each to respond as contemplated by . . . the District's very own policies and procedures on the topic, evidence a failure to correctly supervise staff . . . and amounts to deliberate indifference thereby.

Dkt. #54 at 8. In further support of this claim, Plaintiff argues "a brief review of" two pending, unrelated cases "will support the claim that [AISD] fails to sufficiently train and supervise staff." *Id.* at 11. AISD argues Plaintiff's conclusory contentions are not sufficient to survive its Motion

to Dismiss, and that it would be improper for the court to consider the pending cases' briefings because they are not cited in Plaintiff's Second Amended Complaint. Dkt. #55 at 4.

Similar to the above failure-to-train analysis, for a plaintiff to succeed against a municipality on a failure-to-supervise claim, the complaint must allege facts that plausibly establish "(1) the supervision policies of the municipality were inadequate, (2) the municipality was deliberately indifferent in adopting such polices, and (3) the inadequate-supervision policies directly caused the plaintiff's injuries." *Malone v. City of Fort Worth, Tex.*, 297 F. Supp. 3d 645, 656 (N.D. Tex. 2018); *see Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009). Accordingly, a plaintiff must allege facts that could support a finding that the "municipality 'supervises its employees in a manner that manifests deliberate indifference to the constitutional rights of citizens.'" *Malone*, 297 F. Supp. 3d at 656 (quoting *Doe*, 15 F.3d at 453).

The facts alleged by Plaintiff support, at most, a finding that Shapiro failed to enforce certain AISD policies and procedures. However, as noted above, AISD cannot be held liable for Shapiro's actions or inactions as associate superintendent under section 1983. *See Peterson*, 588 F.3d at 847. Furthermore, Plaintiff fails to plead any facts supporting that the School Board itself was deliberately indifferent in creating or enforcing policies regarding the supervision of its employees. In fact, Plaintiff's pleadings do not reference a single supervision policy; there are no factual allegations about how AISD's supervision of its staff was inadequate; the policies Plaintiff does reference show that the School Board has policies addressing racial harassment, Dkt. #47 at 9-10; and Plaintiff has failed to allege the School Board was aware of the alleged harassment she suffered and Shapiro's corresponding actions. Moreover, for the same reasons as depicted above, Plaintiff does not sufficiently plead deliberate indifference in either of the two manners prescribed

by the Fifth Circuit. *See Littell,* 894 F.3d at 622 (specifically, the proof-by-pattern method and single-incident exception).

Because Plaintiff's allegations in her Second Amended Complaint do not state a municipal liability Fourteenth Amendment due process claim under any of the theories alleged, AISD's Motion to Dismiss should be **GRANTED**.

### E.   Request to Replead

In Plaintiff's Response, she asks the court for an opportunity to replead upon a finding that she has failed to adequately state a claim upon which relief may be granted. Dkt. #54 at 2. Federal Rule of Civil Procedure 16(b) governs a party's request to amend its pleadings after a scheduling order's deadline to amend has passed. *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008). Under Rule 16(b), a party can have the deadline extended only for good cause and with the judge's consent. FED. R. CIV. P. 16(b). Good cause requires a party "show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *S & W Enters., LLC. v. Southtrust Bank of Ala.*, 315 F.3d 533, 535 (5th Cir. 2003).

Here, Rule 16(b) is applicable because the Scheduling Order's deadline to file an amended pleading was September 15, 2019, over a year ago. *See* Dkt. #29. Plaintiff does not allege good cause for extending the deadline nor articulate what she would add in the amended pleading. Furthermore, Plaintiff has already been afforded two opportunities to replead, *see* Dkt. #20, #47, and a final pretrial conference is set for October 29, 2020*, see* Dkt. #29. Based on these facts, the court should **DENY** Plaintiff's request to replead. *See Herrmann Holdings Ltd. v. Lucent Technologies Inc.*, 302 F.3d 552, 567 (5th Cir. 2002) (upholding denial of leave to amend where plaintiffs had already filed original complaint and two amended complaints).

## IV.   RECOMMENDATIONS

In light of the foregoing, the undersigned **RECOMMENDS** that the District Court **GRANT** Austin Independent School District's Rule 12(b)(6) Motion for Partial Dismissal of Plaintiff's Second Amended Complaint (Dkt. #49). Accordingly, the court recommends Plaintiff's section 1983 claim be **DISMISSED WITH PREJUDICE**.

Additionally, the undersigned **RECOMMENDS** that Plaintiff's request to replead be **DENIED** (Dkt. #54 at 2).

The undersigned notes that per this recommendation, Plaintiff's statutory Title VI claim will remain pending.

## V.   OBJECTIONS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985);

*Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

SIGNED August 31, 2020.

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE