IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2021 JUL 28  PM 1: 18

CLERK. US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____
                    DEPUTY

| | | |
|---|---|---|
| CAMRON SNEED, | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CAUSE NO. 1:19-CV-608-LY |
| | § | |
| AUSTIN INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| DEFENDANT. | § | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

BE IT REMEMBERED that on December 7, 2020, the court called the above-styled and numbered cause for bench trial. Plaintiff Camron Sneed and Defendant Austin Independent School District ("AISD") appeared in person or through authorized representative, as appropriate, and through counsel. The trial concluded on December 9, 2020. Having considered the trial evidence, the parties' stipulations and briefs, arguments of counsel, and applicable law, the court makes the following findings of fact and conclusions of law.[1]

## I.   Background

Charles Sneed, Sr. and Pamela Parks, as next friends of their daughter Camron Sneed, initiated this case by bringing racial-discrimination claims against AISD on June 12, 2019.  42 U.S.C. § 1983 ("Section 1983"); 42 U.S.C. § 2000d ("Title VI").  On April 29, 2020, after attaining the age of majority, Camron Sneed amended the complaint to become the sole plaintiff.  Sneed alleges that she suffered racial discrimination while attending AISD.  On AISD's motions to dismiss and for summary judgment, the court dismissed Sneed's Section 1983 claim and several Title VI allegations by finding that AISD was not deliberately indifferent towards Sneed's rights.

---

[1] All findings of fact contained herein that are more appropriately considered conclusions of law are to be so deemed.  Likewise, any conclusion of law more appropriately considered a finding of fact shall be so deemed.

The only remaining allegations before the court on Sneed's Title VI claim are: (1) the receipt of the "Sass-quatch" band award from classmates at a banquet in Spring 2017; (2) racial slurs used by Future Farmers of America ("FFA") students at school; and (3) racial-slur graffiti inside a girls' bathroom on campus and at the FFA farm.

***Factual Background***

Camron Sneed, an African-American female, was born on March 20, 2002.  Sneed is a 2020 graduate of James Bowie High School ("Bowie") within AISD.  Currently, Sneed attends Louisiana State University with aspirations of becoming an equine veterinarian.

Sneed attended Bowie from fall 2016 to spring 2020.  While at Bowie, Sneed participated in extracurricular activities such as band, FFA, track, volleyball, and the Multi-Cultural Awareness Club.[2]  At Bowie, Sneed held officer positions in FFA, MCAC, and the district-wide State FFA chapter.  Sneed was also the recipient of the FFA "Lone Star Award," a top FFA honor within the State of Texas, and consistently made good grades.

### 1.  The "Sass-quatch" Award

At the end of each schoolyear, the Bowie band program holds a banquet. At the banquet, awards are presented to students.  Some awards are chosen and presented by Bowie staff, and some are chosen and presented by upperclassmen section leaders.  The student awards are typically intended to be funny or sarcastic and are not reviewed by staff prior to the banquet.  Sneed was a member of the front ensemble percussion section.  At Sneed's freshman banquet on April 29, 2017, Sneed's section leaders created and presented the awards given to their fellow students.

---

[2]  The Multi-Cultural Awareness Club is made up of students from different ethnicities and races that organize multicultural events and programs throughout the schoolyear that are voluntarily attended by the student body.

At the banquet, Sneed's two section leaders presented Sneed with the "Sass-quatch" award in the form of a certificate and a trophy. The certificate read as follows: "For being one of the absolute sassiest members of the Front Ensemble. There is no denying your impressive ability to make any other member of the [Front Ensemble] either jealous or enraged at your ability to make split-second savage remarks. Great job, what a [feat]." Sneed found the award offensive, but neither Sneed nor her parents reported their concerns to school officials until filing the complaint.

## 2. FFA Students Using Racial Slurs

During Sneed's freshman year, the agriculture program ("ag") and FFA teachers were Brad Pierce and Tiffany Black. During Sneed's sophomore through senior years, the ag and FFA teachers were Amber Dickinson and Shelby Stephens.

The ag and FFA programs at Bowie utilize a farm located near Bowie's campus. The farm has paddocks, barns, pig and hen pens, and other structures that help ag and FFA students learn to raise and care for animals. During Sneed's freshman year, the farm was owned by an individual who lived on the farm and who granted access and use of the property to Bowie's ag and FFA programs. During Sneed's sophomore year, AISD purchased the property.

During Sneed's time at Bowie, there were three instances in which Sneed or her parents reported an FFA student using the racial slur commonly referred to as the N-word.

### 1. Pig Church

After school on December 14, 2016, during Sneed's freshman year, Pierce was conducting an exercise called "pig church" with ag and FFA students raising pigs. Pig church is a mock auction held in an arena at the farm to help students learn best practices for showing their pigs.

Parks drove Sneed to the farm after school that day. Upon arrival, Sneed exited the vehicle, retrieved her pig from its pen, and joined the other students and Pierce in the arena.

Parks exited the vehicle after Sneed and walked towards the arena where Sneed was already participating in pig church. Parks noticed a group of male students standing outside of the arena and claims to have heard them using vulgar language while complaining about Black, who was not present. Sneed and Pierce were out of earshot and did not hear anything of the language used.

Parks verified that Sneed did not hear the exchange because she noticed that Sneed seemed unbothered and engrossed in pig church. Parks also verified that Pierce did not hear the exchange because she attempted to get Pierce's attention, but he remained focused on teaching the students. Parks decided to confront the students about their language. Parks alleges that the students responded by calling her a "bitch." Parks then pulled Sneed from the arena and left pig church early. To explain her decision to leave early, Parks told Sneed the language used by the students. Parks did not report what she heard to Pierce. Instead, after leaving the farm, Parks called Black to report FFA students using inappropriate language but did mention their use of the N-word.

The next morning, Parks also emailed Susan Leos, then interim principal of Bowie, and requested a conference. In the email, Parks discussed previous issues of vandalism, other general misconduct with the FFA program, and past complaints about communications with teachers. Parks also, for the first time, reported that the FFA students had used the N-word in her presence.

Leos agreed to Parks's request for a conference and they met that day, December 15, 2016. During an hour-long meeting, the two conferred on several perceived issues with the school, including Parks's concerns that Sneed's lack of play time in volleyball, an incident from a band trip to Indianapolis, issues with Sneed's school schedule, and the recent incident at the farm. In response, Leos directed Vincent Trevino, then an assistant principal, to investigate the incident. Leos spoke with Pierce to verify that he did not hear any use of the N-word. FFA students were interviewed. Trevino reported that he completed the investigation and dealt appropriate discipline.

4

On December 19, Leos and Trevino held a meeting with the FFA alumni board, which consists of parents and others that support the FFA program. During this meeting, many issues were addressed. Leos and Trevino stressed to the parents that too often misbehavior would go unreported, denying Bowie the ability to rectify the situation. Parks spoke at this meeting and shared what she witnessed on December 14. The other parents apologized that Parks heard that type of language. After the meeting, a curfew was instated at the farm. Campus police were instructed to patrol the farm more frequently, the school's disciplinary procedures were reviewed with parents, and parents and students were encouraged to report any observed misbehavior.

During the 2016-17 schoolyear, Pierce and Black did not hear FFA students using the N-word. Outside of December 14, 2016, neither Sneed nor her parents reported such misbehavior.

2. Noodle [N-word]

On December 7, 2017, Sneed and other FFA students were in Dickinson's classroom. Near the end of class, a special-education student told Sneed, "Hey, Camron, I have a new nickname for [an Asian-American student at Bowie]: noodle [N-word]." Sneed did not report this to Dickinson.

Sneed instead told Parks after school. Parks immediately reported the misconduct to Mark Robinson, the new principal. In response, Robinson informed Leos and Dickinson of the incident and tasked Stephanie McGraw, an assistant principal, to investigate. McGraw interviewed Sneed, the student who made the comment, and another student to confirm the N-word was used.

For discipline, and in line with the student's Individualized Education Plan,[3] McGraw held a conference with the student, his parents, Dickinson, and Stephens where it was explained that, if the behavior was repeated, he would be removed from the FFA program.

---

[3] An Individualized Education Plan is a legal document crafted by parents and district personnel to ensure students with identified disabilities receive specialized instruction and services.

### 3. Lunch period in Dickinson's classroom

On May 18, 2018, Parks emailed Robinson regarding concerns of non-racial misconduct that occurred during a FFA banquet. Robinson responded and apologized that neither he or Leos were in attendance to witness the behavior, but that he had a goal for the next year to ensure an administrator attended every meeting and function connected to Bowie's student organizations.

Parks then responded on the same email chain, stating that Sneed had just texted Parks that, during the lunch period, she heard unknown students using the N-word in Dickinson's classroom. Sneed did not report the misconduct to Dickinson. Parks's email notes that Dickinson's door was closed, and that Dickinson had not heard the N-word used.

Almost concurrently with receiving Parks's email, Sneed's father called Robinson about the lunch-period incident. Robinson spoke with Sneed, Sr. to assure him that action would be taken. Robinson then immediately directed Assistant Principal Carla De La Rosa to investigate.

De La Rosa spoke with Sneed and five other students who were present in the classroom during the lunch period. All five students denied hearing the N-word. Two students reported to De La Rosa that they knew other students who had previously been disciplined for using inappropriate language and would have been likely to notice if the N-word had been used.

De La Rosa further spoke with Dickinson, who verified that her door had been closed during lunch and she did not hear any students using inappropriate language. Following the incident, Dickinson stated that she would no longer allow students to be in her classroom before or after school or during lunch, unless for tutoring, at which time she would be actively monitoring.

During the 2017-20 school years, Dickinson and Stephens never heard FFA students using the N-word. Outside of December 7, 2017, and May 21, 2018, neither Sneed nor her parents reported such misbehavior.

### 3. Racial-Slur Graffiti

Sneed asserts that she saw the N-word written at two different locations on the Bowie campus: the farm and a girls' bathroom.  Neither location had cameras to identify perpetrators. Bowie administrators and teachers—including Robinson, Leos, McGraw, Pierce, Black, Dickinson, and Stephens—did not see or receive reports of racial graffiti at the farm or the girls' bathroom.  Bowie's policy is to report all graffiti (racial, sexual, or otherwise) and remove it.

During her freshman year, Sneed asserts she saw the N-word and other general graffiti on the entrance door to the FFA barn.  During either her sophomore or junior year, Sneed asserts that she saw the N-word written in the stall of a girl's restroom located near the band hall that Sneed was using to change for track practice.  In both instances, Sneed did not know who had written the N-word or when and did not report the existence of the graffiti to any school official.

## II.   Analysis

Title VI provides that no person "shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C § 2000d.

Because Title VI is designed to stop intentional race discrimination, Sneed must prove that AISD intended—or was deliberately indifferent to—the alleged racial discrimination she received from other students.  *Fennell v. Marion ISD*, 804 F.3d 398, 408 (5th Cir. 2015) (applying deliberate-indifference standard to claims of liability arising from student-on-student harassment). Student-on-student harassment liability attaches if (1) the harassment was so severe, pervasive, and objectively offensive that it can be said to deprive access to educational opportunities or benefits, and the district (2) had actual knowledge, (3) had control over the harasser and the environment in which the harassment occurs, and (4) was deliberately indifferent. *Id.* at 408–09.

"Peer harassment is less likely to support liability than is teacher-student harassment." *Sanches v. Carrollton-Farmers Branch ISD*, 647 F.3d 156, 166 (5th Cir. 2011). "[T]o be actionable, the harassment must be more than the sort of teasing and bullying that generally takes place in schools; it must be so severe, pervasive, and objectively unreasonable." *Id.* at 167.

A school district may be held liable only if an appropriate school official, with authority to supervise and take action to end such abuse, had actual knowledge of the abuse but failed to take action. *Rosa H. v. San Elizario ISD*, 106 F.3d 648, 660 (5th Cir. 1997); *see also Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 258 (2009) ("Congress modeled Title IX after Title VI . . . and passed Title IX with the explicit understanding that it would be interpreted as Title VI was."). As a matter of law, teachers, coaches, and janitors are not appropriate persons for purposes of establishing knowledge on the part of AISD. *Id.* at 660.

Further, deliberate indifference is a high burden. "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference." *Alton v. Texas A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999).

In the school context, an administrator is not deliberately indifferent simply because the administrator chose one course of discipline over another. *Sanches*, 647 F.3d at 167–68. When one student's conduct impacts another's, the school is obligated to balance the rights and interests of both. *See I.L. v. Houston ISD*, 776 F. App'x 839, 842–44 (5th Cir. 2019); *E.M. v. Austin ISD*, 2018 WL 627391 (W.D. Tex. Jan. 30, 2018), *aff'd*, 770 F. App'x 712 (5th Cir. 2019). As such, "[s]chools are not required to remedy the harassment or accede to a parent's remedial demands, and courts should refrain from second-guessing the disciplinary decisions made by school administrators." *Id.* Further, school officials do not have a constitutional duty to prevent further harm to a student. *See Doe v. Dallas ISD*, 153 F.3d 211, 218 (5th Cir. 1998).

### 1. The "Sass-quatch" award

AISD argues that because "online sources describe Sasquatch, or Big Foot, as a large, hairy, <u>humanlike</u> creature akin to the Yeti or Abominable Snowman from Himalayan folklore," it is reasonable to assume that not all students and teachers would find the "Sass-quatch" award to be racially offensive. The court need not analyze such the comparison because, as a threshold matter, assuming *arguendo* that the content and presentation of the is actionable under Title VI, neither Sneed nor her parents complained about the award to an appropriate school official.

Neither Sneed nor Parks immediately reported concerns about the award to the band director at the time, Ryan Thomas, or anyone else. Even if they had, Thomas is not considered an appropriate official as he was a teacher and not an administrator. *See Rosa H.*, 106 F.3d at 660. As such, AISD did not have the requisite actual knowledge required to trigger its duty under Title VI. And without requisite knowledge, the court concludes that AISD could not act with deliberate indifference towards the "Sass-quatch" award. *See Fennell*, 804 F.3d at 408–09.

### 2. FFA Students Using Racial Slurs

The court finds that there were three occasions in which the use of the N-word was reported by Sneed or her parents. As liability extends only to instances of actual knowledge, the court will address whether AISD acted with deliberate indifference in those three reported instances, which occurred on: (1) December 14, 2016; (2) December 7, 2017; and (3) May 21, 2018.

Based on the evidence, it is apparent that Parks, and not Sneed, heard FFA students using the N-word during pig church. As Title VI is an intentional discrimination statute that protects students, Parks's experience of offensive behavior cannot be used to establish an injury on Sneed's part. Therefore, as a matter of law, this allegation of harassment cannot support Sneed's Title VI claim against AISD.

Even if Sneed had heard students using the N-word that day, following Parks's reporting the misbehavior, an investigation was conducted and discipline instituted. Leos and Trevino held a meeting with FFA parents and volunteers five days later to discuss misbehavior (including inappropriate language) occurring on the farm.

As for the December 7, 2017 use of the N-word by the special-education student, the court has found that AISD did not act with deliberate indifference and previously dismissed this claim.

Turning to the incident of May 21, 2018, based on the evidence it is clear that an investigation was immediately initiated and the report of FFA students using the N-word was found to be unsubstantiated. Though Sneed and her parents do not agree with the outcome of the investigation, an adequate investigation was completed. Further, even though the report was unsubstantiated, the ag teacher enacted changes to her classroom protocol, including limiting access to the classroom when she was unable to actively monitor every student.

The court concludes that AISD did not act with deliberate indifference towards the three reported uses of racial slurs by FFA students. *See Fennell*, 804 F.3d at 408–09.

### 3. Racial-Slur Graffiti

Without more, instances of racial graffiti cannot establish a racially-hostile environment. *See Collier v. Dallas Cty. Hosp. Dist.*, 827 F. App'x 373 (5th Cir. 2020). In *Collier*, Collier, an African American, alleged he was fired in retaliation for complaining of racial discrimination and that his workplace was a racially-hostile environment. Evidence showed that Collier reported that the N-word was scratched into an elevator, two swastikas were drawn on the wall of a room he worked in, and that nurses called him and other African-American employees "boy." *Id.* at 378. The court found all of this "was not physically threatening, was not directed at [Collier] (except for the nurse's comment) and did not unreasonably interfere with his work performance." *Id.*

Sneed claims that AISD violated Title VI because she saw racial graffiti on two occasions over four years. Assuming *arguendo* that these isolated instances of graffiti were actionable under Title VI, Sneed did not report either instance to a school administrator. Even without reporting, no administrator at Bowie saw or otherwise knew about any racial graffiti on campus. And each testified that, if they had seen such graffiti, the graffiti would have been removed immediately. As such, AISD did not have the requisite actual knowledge required to trigger its duty under Title VI. And, without the requisite knowledge, the court concludes that AISD did not act with deliberate indifference towards racially-motivated graffiti found by Sneed.

## III.   Closing

All findings of fact and conclusions of law contained in the report and recommendations of the United States Magistrate Judge filed August 31, 2020 (Doc. #76) and the report and recommendations filed September 11, 2020 (Doc. #77), and approved by the court on September 16, 2020 (Doc. #79) and September 29, 2020 (Doc. #83), respectively, are brought forward and incorporated in these findings and conclusions.

The court will render a final judgment consistent with these findings and conclusions.

SIGNED this _28th_ day of July, 2021.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE